## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICK HAGGERTY, | : | No. 3:19-cv-00507-JAM |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KAYCAN, LTD., | : | |
| Defendant. | : | DECEMBER 1, 2020 |

### DEFENDANT'S MEMORANUM OF LAW IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, Defendant Kaycan, Ltd. ("Kaycan"), respectfully moves for summary judgment on the sole count of Plaintiff's complaint — a state law disability discrimination claim. Kaycan submits this memorandum of law in support of its Motion for Summary Judgment ("Motion"), together with its Local Rule 56(a)(1) Statement of Undisputed Material Facts, and supporting affidavits and exhibits. For the reasons set forth below, Kaycan requests that the Court grant its Motion and dismiss this case with prejudice.

### I.   PRELIMINARY STATEMENT

Plaintiff, Patrick Haggerty, resigned from his employment with Kaycan on September 12, 2017 amid interpersonal conflicts with his co-workers and communication problems with management. Kaycan accepted his resignation that same day, and Plaintiff did not contest that decision or claim that his resignation was involuntary. Five months later, however, Plaintiff sued Kaycan claiming that Kaycan discriminated against him by denying him a promotion and terminating his employment because he suffered from two mini-strokes the previous year. Plaintiff's case suffers from several fatal flaws. First, the two mini-strokes that Plaintiff experienced do not constitute a legally recognized disability. Second, Plaintiff did not suffer an

adverse employment action because he voluntarily resigned. Finally, Plaintiff cannot show that his reason for leaving Kaycan occurred under circumstances giving rise to an inference of discrimination. Indeed, the evidence shows that Kaycan's senior management knew little about Plaintiff's mini-strokes, did not regard him as disabled, and continued to consider him for a promotion until the day he resigned. This is simply a case in which Plaintiff quit his job out of frustration with his compensation and the company's management.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Kaycan has set forth the undisputed factual background of this case in detail in the Rule 56(a)(1) Statement of Undisputed Material Facts ("SOF"), and therefore it will not repeat each and every fact here. In order to put the below arguments in the appropriate context, however, Kaycan sets forth the following factual background for the Court.

Plaintiff worked for Kaycan from March of 2009 until the day he resigned in September of 2017. (SOF ¶¶ 2-6.) During that time, Kaycan promoted Plaintiff to a new position and increased his salary several times. (*Id*. ¶¶ 5, 6.) Plaintiff suffered two mini-strokes in December 2016 and May 2017, for which he missed approximately two weeks of work each time — a total of four weeks. (*Id*. ¶¶ 9, 12.) Kaycan permitted Plaintiff to take time off from work to recover and did not demote him, cut his pay, or restrict his job responsibilities in any way. (*Id*. ¶¶ 10, 13, 14.)

Around this time, Plaintiff became increasingly frustrated by his lack of upward mobility and what he perceived as communication issues with Kaycan's management. (*Id*. ¶¶ 43-47, 51-53.) Specifically, Plaintiff had applied for the newly created position of Branch Operations Manager with Kaycan and expected Kaycan to promote him to that position. (*Id*. ¶¶ 23, 52.) In addition, there were significant staffing and customer service issues at the Bristol branch. For

example, employees were missing shifts regularly which caused delays with deliveries and an inability to respond to customers' needs.  (*Id*. ¶¶ 42-47.)  Plaintiff was not able to handle these issues without intervention from management.  (*Id*. ¶¶ 46, 48-49.)  Kaycan's management attempted to resolve these issues through a number of meetings and conference calls.  (*Id*. ¶¶ 48, 75.)  Rather than demonstrate his leadership ability, however, Plaintiff became defensive and felt victimized by management.  (*Id*. ¶¶ 48, 51-53.)  He communicated these feelings through a series of emails to management, culminating in his resignation letter of September 12, 2017.  (*Id*. ¶¶ 43-48, 51-53, 63.)  Elena Spensley, Kaycan's Human Resources Manager, responded to Plaintiff's email shortly thereafter accepting his resignation.  (*Id*. ¶ 69.)

Plaintiff attempted to rescind his resignation just an hour after Kaycan accepted it.  (*Id*. at ¶¶ 73-74.)  Plaintiff spoke with Ms. Spensley by phone and the two discussed a previously planned meeting at the Bristol branch later that month to address the personnel and customer service problems.  (*Id*. ¶ 75.)  Ms. Spensley initially told Plaintiff that he could return to work the next day.  (*Id*. ¶ 77.)  After further consideration, however, Kaycan decided not to accept Plaintiff's offer to rescind his resignation due to his stated dissatisfaction with working for Kaycan.  (*Id*.)  Kaycan agreed not to contest unemployment benefits because his resignation was voluntary.  (*Id*.)

In February of 2018, Plaintiff filed a complaint against Kaycan with the Connecticut Commission on Human Rights and Opportunities ("Commission") for disability discrimination. The Commission issued a release of jurisdiction on December 5, 2018.  On March 5, 2019, Plaintiff filed a one-count complaint for violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 *et seq.*, in the Connecticut Superior Court, Judicial District of New Britain, docket no. HHD-CV19-6051145-S.  (*See generally*, Compl., ECF No. 1-

1.)[1]  Kaycan filed a Notice of Removal to this Court on April 4, 2019.  (ECF No. 1.)  Plaintiff's

claim for disability discrimination under CFEPA remains the sole claim in this case and Kaycan

moves for summary judgment on that claim.

Plaintiff claims that he was subjected to a hostile work environment and retaliation by

both his peers and superiors at Kaycan as a result of his two mini-strokes.  The only facts that he

can cite in support of his claim, however, are that (1) his 2016 performance review was several

months late, (2) he did not receive a promotion to Branch Operations Manager before he

resigned, and (3) he received criticism for his unkempt appearance and messy workstation during

an on-site visit from management. (SOF ¶¶ 51-53; Ex. 2, Haggerty Tr. at 29:2-15, 34:10-35:8.)

Yet Plaintiff has failed to connect any of these events to his medical condition.  In fact,

Plaintiff's mini-strokes never came up in his conversations with management about his

performance or potential promotion.   (SOF ¶¶ 54-60.)  Plaintiff never even mentioned his

medical condition when discussing the alleged hostile environment and retaliatory treatment in

the several, lengthy emails he wrote to management regarding his concerns.  (*See* Ex. 7,

P000163-164; Ex. 8, P000154-155; Ex. 10, P000010.)

Plaintiff claims that Kaycan's attitude towards him changed after his return from his

second mini-stroke.  Yet, Plaintiff cannot identify any statements or actions linking the mini-

strokes to what he perceived as unfair scrutiny, and several undisputed facts undermine his

theory on timing.  The evidence in this case is woefully insufficient to raise a genuine issue of

material fact that Plaintiff suffered discrimination based on a disability.

---

[1] The case was reassigned to the Hon. Jeffrey A Meyer on October 9, 2019.  (ECF No.
20.)

### III.  <u>LEGAL STANDARD</u>

"The standards governing summary judgment are well-settled." *Ford v. Reynolds*, 316

F.3d 351, 354 (2d Cir. 2002).  Summary judgment is appropriate if, after discovery, the

nonmoving party "has failed to make a sufficient showing on an essential element of [its] case

with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  "The party seeking summary judgment has the burden to demonstrate that no genuine

issue of material fact exists." *Ford*, 316 F.3d at 354.  "[T]he burden on the moving party may be

discharged by 'showing' - that is pointing out to the district court - that there is an absence of

evidence to support the nonmoving party's case." *PepsiCo. Inc. v. Coca-Cola Co.*, 315 F.3d 101,

105 (2d Cir. 2002).  Rule 56 "provides that the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"If the party moving for summary judgment demonstrates the absence of any genuine

issue as to all material facts, the nonmoving party must, to defeat summary judgment, come

forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid

Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). "Unsupported

allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41

(2d Cir. 2000).  When a motion for summary judgment is supported by documentary evidence

and sworn affidavits, the nonmoving party must do more than "vaguely assert[] the existence of

some unspecified disputed material facts" or present "mere speculation or conjecture." *Western

World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990).

In regard to employment discrimination cases, the Second Circuit has stated that "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases . . . 'the salutary purposes of summary judgment — avoiding protracted, expensive, and harassing trials — apply no less to discrimination cases than to . . . other areas of litigation.'" *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *see also Men of Color Helping All Soc., Inc. v. City of Buffalo*, 529 Fed. Appx. 20, 27 (2d Cir. 2013) ("Defendants–Appellees are thus entitled to judgment as a matter of law on the discrimination claims."); *McDonald v. U.S. Postal Serv. Agency*, No. 12-4114-cv, 2013 WL 5681331, *1 (2d Cir. 2013) (affirming summary judgment for employer on Title VII and ADEA claims).

## IV.   <u>ARGUMENT</u>

In order to make out a prima facie case for disability discrimination under Connecticut law, Plaintiff must prove that "(1) he suffers from a disability or handicap, as defined by the [applicable statute]; (2) he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation; and that (3) [the defendant] took an adverse employment action against him because of, in whole or in part, his protected disability." *Seely v. Winchester Elecs. Corp.*, No. CV116008102, 2013 WL 4504830, at *3 (Conn. Super. Ct. Aug. 2, 2013).

The only disability Plaintiff claims in this lawsuit consists of two minor transient ischemic attacks (mini-strokes) that occurred in December of 2016 and May of 2017.  (*See* Compl., ECF No. 1-1.)  These medical events -- which are defined as "transient" or temporary -- do not amount to a legally recognized disability under Connecticut law.  Furthermore, Plaintiff cannot prove that he suffered an adverse employment action as a result of these medical events because he voluntarily resigned from Kaycan and his resignation had nothing to do with the

mini-strokes. Plaintiff cannot make out a prima facie case of disability discrimination, and, therefore, his claim should be dismissed.

### A.   Plaintiff Does Not Suffer From a Legally Recognized Disability

CFEPA defines the term "[p]hysically disabled" as "refer[ring] to any individual who has any chronic physical handicap, infirmity or impairment." Conn. Gen. Stat. § 46a–51(15). Plaintiff's own testimony forecloses any argument that his two mini-strokes constitute a disability under CFEPA.

First, Plaintiff testified that the mini-strokes were not permanent and resolved within a brief period of time after hospitalization. (Ex. 2, Haggerty Tr. at 25:9-14, 36:23-37:4, 51:3-11, 135:13-16.) Plaintiff did not have any restrictions or limitations after hospitalization, and did not ever receive a disability rating. (*Id*. at 25:20-26:1; 135:4-16). Courts in this district have dismissed disability discrimination claims on stronger evidence. *See, e.g*., *Buotote v. Illinois Tool Works, Inc*., 815 F. Supp. 2d 549, 558 (D. Conn. 2011) ("Because Plaintiff provides no evidence of his disability beyond his own testimony and a disability rating that lacks context or other helpful guidance, from which the extent or duration of his impairment or limitation may be discerned, and more is required in the Second Circuit, Plaintiff has failed to demonstrate ADA or CFEPA disability, and summary judgment will enter on his CFEPA claim."). In *Buotote*, the Court noted that "although the CFEPA has no 'substantial limitation' requirement, the need for corroborating evidence of disability under the ADA is also required under the CFEPA." *Id*. at 557 n.10.

Second, Plaintiff has not and cannot identify any specific limitations in his work or personal life caused by the mini-strokes. To the contrary, Plaintiff testified that the mini-strokes did not limit any major life activity. (Ex. 2, Haggerty Tr. at 36:23-37:10.) Courts in this district

have found similar testimony sufficient to defeat a CFEPA claim as a matter of law. *See, e.g.*, *Buotote*, 815 F. Supp. 2d at 557 (D. Conn. 2011) ("Although Plaintiff indisputably suffered injury to his back, he offers no medical support in the record to substantiate the specific limitations that he claims he suffers, nor for his assertion that his impairment is chronic as required under the CFEPA."). Plaintiff testified that he did not require ongoing treatment for the mini-strokes, he did not have any limitations in his job upon returning to work, and that he did not expect the mini-strokes to recur. (Ex. 2, Haggerty Tr. at 26:15-28:21, 36:23-37:4, 135:7-16.) His testimony clearly establishes that he does not suffer from a "disability" within the meaning of CFEPA. As a result, summary judgment should enter for Kaycan on the sole claim in this lawsuit.

      **B.**     **Plaintiff Did Not Suffer an Adverse Employment Action**

          1.     Plaintiff did not suffer an adverse employment action because he voluntarily resigned.

Even if this Court concluded that Plaintiff has a disability under the law, Plaintiff's voluntary resignation from Kaycan defeats his CFEPA claim as a matter of law. *See, e.g., Shaw v. Yale New Haven Hosp.*, No. 3:18-cv-00067 (VLB), 2020 WL 1923599, at *8 (D. Conn. Apr. 21, 2020); *Davis v. Koffee Kup Bakery, Inc.*, No. 2:15-cv-152, 2016 WL 4411399, at *6 (D. Vt. Aug. 18, 2016) ("Where an employee voluntarily quits, there is no adverse employment action."). In *Shaw*, the Court granted the defendant's motion for summary judgment on ADAAA and CFEPA claims, finding that "Plaintiff did not suffer an adverse employment action" because the plaintiff submitted a letter of resignation to her supervisor. *Id*. "Defendant's acceptance of Plaintiff's resignation was not an adverse employment action as a matter of law, as numerous courts in this Circuit have held." *Id*.

Plaintiff testified that he submitted a resignation letter to Kaycan on September 12, 2017. (Ex. 2, Haggerty Tr. at 112:11-15; Ex. 10, P000010.)  Plaintiff intended his resignation to be final.  (Ex. 2, Haggerty Tr. at 120:6-8.)  After discussions among management, Kaycan accepted Plaintiff's resignation that same day.  (Ex. 1, Spensley Aff. ¶¶ 29, 30; Ex. 13, Kaycan0009.)

Nor does Defendant's refusal to rescind Plaintiff's voluntary employment resignation constitute an adverse employment action.  "Federal courts across the country have held that the refusal to allow rescission of a voluntary resignation does not constitute an adverse action . . . . The reason for this is simple: employers are not usually obligated to allow their employees to rescind their resignations."  *Cadet v. Deutsche Bank Sec. Inc*., No. 11 Civ. 7964, 2013 WL 3090690, at *11 (S.D.N.Y. June 18, 2013) (citing cases) (internal quotation marks omitted). "Here, Plaintiff does not argue that Defendant had a duty, contractual or otherwise, to accept Plaintiff's attempted rescission of her resignation.  In sum, neither Plaintiff's voluntary resignation from Defendant's employment nor Defendant's refusal to reinstate Plaintiff constitute adverse employment actions."  *Shaw*, 2020 WL 1923599, at *8.  Kaycan accepted Plaintiff's resignation upon submission, and had no obligation to reinstate him when he changed his mind.

2.    Plaintiff cannot show that his working conditions amount to constructive discharge.

"[A] [c]onstructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign. . . .  A claim of constructive discharge must be supported by more than the employee's subjective opinion that the job conditions have become so intolerable that he or she was forced to resign." *Appleton v. Bd. of Educ*., 53 Conn. App. 252, 260 (1999), *rev'd in part on other grounds*, 254 Conn. 205 (2000) (internal quotation marks omitted).  Courts have found that "the standard for

constructive discharge is indeed a demanding one." *Leson v. ARI of Conn., Inc.*, 51 F. Supp. 2d

135, 144 (D. Conn. 1999) (internal quotation marks omitted).  Recently, the Connecticut

Supreme Court has clarified that a Plaintiff must prove three elements to satisfy the constructive

discharge standard: "[1] the employer intentionally created the complained of work atmosphere;

[2] the work atmosphere was so difficult or unpleasant that a reasonable person in the

employee's shoes would have felt compelled to resign; and, [3] the plaintiff in fact resigned."

*Karagozian v. USV Optical Inc.*, 335 Conn. 426, 430 (2020); *see also Wilburn v. Fleet Fin.*

*Group, Inc.*, 170 F. Supp. 2d 219, 238 (D. Conn. 2001) ("a working environment can be far from

perfect and yet will not be held to be intolerable.").  The Court added: "[t]he standard contains a

subjective inquiry (did the employer intend to create the working condition) and an objective

inquiry (the impact the working conditions would have on a reasonable person).  To evaluate the

working conditions, we evaluate whether a reasonable person in the employee's shoes would

have felt compelled to resign."  *Karagozian*, 335 Conn. at 443.

        As a threshold matter, Plaintiff cannot credibly argue that his resignation amounts to

constructive discharge because he admitted that he resigned voluntarily, and the alleged

retaliation and hostile work environment consists of nothing more than being ignored.  Plaintiff

repeatedly asserted in his resignation letter and throughout his deposition that he was subject to a

"hostile work environment."  (SOF ¶¶ 53, 67, 68; Ex. 10, P000010.)  However, when pressed

about how the work environment was hostile, Plaintiff could offer nothing more than labels and

bare conclusions, stating that the environment was hostile because of "the harassment, the

retaliation . . . . just the overall uncomfortable environment that [Kaycan] had created for me."

(Ex. 2, Haggerty Tr. at 113:9-12.)  When asked to describe the harassment or retaliation with

specificity, Plaintiff responded: "Well, at the end of the day it was about being ignored. Asking

10

for assistance from the person who is supposed to be assisting you and being just left to deal with it." (*Id*. at 115:11-14.)

Here, Plaintiff's allegations amount to nothing more than a sentiment that Kaycan should have valued him more than it did.  Indeed, Plaintiff <u>was</u> a valued employee who received several promotions and raises in his tenure with the company.  (*See* Ex. 5, P000024-28; Ex. 3, P000001; Ex. 1, Spensley Aff. ¶¶ 10-12.)  He simply was not suited for the role of Branch Operations Manager, which required the ability to handle personnel issues independently and grow the business.  (*See* Ex. 1, Spensley Aff, ¶¶ 20, 21; Ex. 4, Copen Tr. at 10:5-11, 32:1-8; Ex. 6, Kaycan0019.)

Second, an employer's failure to acquiesce to an employee's request for more authority or additional support does not amount to objectively "intolerable" working conditions.  In *Miller v. Praxair*, 408 Fed. Appx. 408, 410 (2d Cir. 2010), the Second Circuit affirmed the granting of summary judgment to an employer in a case where the employee claimed she was forced to resign.  "And as our case law makes clear, the standard is a demanding one, because a constructive discharge cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer or that the employee's working conditions were difficult or unpleasant."  *Id*. (internal quotation marks and citation omitted).  In *Miller*, the court concluded that "[t]he conditions alleged by plaintiff largely amount to the sort of routine disagreements with supervisors or mild criticisms that are simply insufficient to establish the sort of 'intolerable' working conditions necessary to a constructive discharge claim."  *Id*.

Here, Plaintiff's allegations are nothing more than routine disagreements with management and trivial slights that do not amount to working conditions so intolerable that a reasonable person would be compelled to resign.  Indeed, Plaintiff himself attempted to <u>revoke</u>

11

the resignation — thereby evidencing that the conditions were not, indeed, so horrible.  (*See* Ex. 2, Haggerty Tr. at 118:19-24; Ex. 12, P000147-149.)  He simply made a choice to resign that he immediately regretted.  It does not fall to this Court to correct any such second thoughts.

        3.      Kaycan's failure to promote plaintiff before his resignation does not constitute an adverse employment action.

Faced with the reality that his voluntary resignation cannot constitute an adverse action, Plaintiff may argue that Kaycan's failure to promote him to the Branch Operations Manager position is actionable.  His argument suffers from two fatal flaws.  First, Kaycan did not fill the position until after Plaintiff resigned.  (*See* Ex. 1, Spensley Aff. ¶¶ 22-24.)  According to Susan Copen, Kaycan's Director of Administration, Plaintiff remained under consideration for the position up until the day the he resigned.  (Ex. 4, Copen Tr. at 9:17-10:4, 31:16-32:18.)

Moreover, there is no evidence that Kaycan decided not to promote Plaintiff before he resigned due to his mini-strokes.  In fact, when asked whether he believed that he did not get the promotion because of the mini-strokes, Plaintiff responded: "I'm really not sure, to be honest with you." (Ex. 2, Haggerty Tr. at 49:5-7.)  To the contrary, Kaycan had legitimate, non-discriminatory reasons not to promote Plaintiff before he resigned, including his lack of leadership experience and inability to manage interpersonal conflicts at the Bristol branch.  (*See* Ex. 1, Spensley Aff. ¶¶ 20, 21; Ex. 4, Copen Tr. at 32:1-33:3.)  Kaycan discussed some of those reasons internally, <u>before</u> Plaintiff had the second mini-stroke.  (*See* Ex. 6, Kaycan0019.)

**C.    Plaintiff Cannot Identify Any Circumstances That Give Rise to an Inference of Discrimination.**

Even if Plaintiff could produce evidence sufficient to show that (a) he had a legally recognized disability, and (b) he suffered an adverse employment action -- which he cannot -- Plaintiff's claim still fails because there is no evidence that any act by Kaycan was motivated by

discrimination. *See Rivera v. Thurston Foods, Inc.*, 933 F. Supp. 2d 330, 338–39 (D. Conn.

2013) (Arterton, J.) (granting summary judgment for employer because "Plaintiff has failed to

offer any evidence that his termination occurred under circumstances giving rise to an inference

of invidious discrimination").  As a threshold matter, Plaintiff admitted that no one at Kaycan

ever mentioned the mini-strokes or his time out of work as a basis for its decision not to promote

Plaintiff.

> Q. In any of these conversations that we were just discussing that form the basis
> of your statement about harassment or hostility or retaliatory behavior, did anyone
> at Kaycan mention the mini strokes?
>
> A. No. Not to me personally, no.
>
> Q. To your knowledge, did they mention it to anyone else?
>
> A. Not that I'm aware of, no.
>
> ***
>
> Q. What do you believe was the basis for Kaycan's of your employment?
>
> A. I think the basis of their termination was that I had these medical incidents,
> they saw me as somebody who wasn't going to fit their -- I don't know, fit into
> their plans anymore, and so they decided to, you know, make it miserable until
> they could get me out and so they did.
>
> Q. What role did the medical incidents play?
>
> A. What do you mean?
>
> Q. How were those a basis for Kaycan to terminate your employment?
>
> A. I don't know.

(Ex. 2, Haggerty Tr. at 109:5-13, 134:5-17.)[2]

---

[2] It is also worth noting that Plaintiff missed significantly more time from work for a back
surgery in 2015 than he missed for the mini-strokes, and admitted that he did not suffer any
negative consequences upon his return from the back surgery.  (Ex. 2, Haggerty Tr. at 41:4-14.)

The evidence collected in this case shows that there were legitimate, non-discriminatory reasons for not promoting Plaintiff to Branch Operations Manager before his resignation.  These reasons include the following:

- Kaycan was not in position to hire a Branch Operations Manager for the Bristol branch before Plaintiff resigned.  (Ex. 4, Copen Tr. at 9:17-10:4, 19:22-20:2, 31:16-32:18; Ex. 1, Spensley Aff. ¶¶ 22-24.)

- Plaintiff lacked leadership and conflict resolution skills necessary for the position.  (Ex. 1, Spensley Aff. ¶¶ 20, 21.)

- Plaintiff lacked the organizational skills necessary for the position, and even admitted that the warehouse was "a disaster" under his leadership.  (Ex. 2, Haggerty Tr. at 65:5-12)

- Kaycan had reservations about Plaintiff's dedication to the company given his negative attitude toward his co-workers and threats to quit. (Ex. 13, Kaycan0009; Ex. 4, Copen Tr. at 32:1-24; Ex. 1, Spensley Aff. ¶¶ 21, 30.)

In *Buck v. AT & T Servs., Inc*., a case with similar facts, the court concluded that the Plaintiff was not selected for positions because he lacked one of the required skills or because a more qualified candidate applied, not because of his disability. No. 3:08–CV–1619 (JCH), 2010 WL 2640045, at *8–9 (D. Conn. Jun. 28, 2010).  Here, the undisputed evidence demonstrates that Kaycan did not believe that Plaintiff was ready for a managerial position before he resigned. Plaintiff did not display good leadership skills and did not have the acumen to grow the business. (*See* Ex. 1, Spensley Aff. ¶¶ 20, 21)

The only evidence Plaintiff can cite to show that Kaycan's failure to promote him was motivated by discrimination is the timing of events.  (*See* Ex. 2, Haggerty Tr. at 37:24-38:18;

134:5-135:12.)  Timing alone, however, cannot save Plaintiff's discrimination claim.  *Chawki v. NYC Bd. of Educ.*, 341 F. App'x 660, 662 (2d Cir. 2009) (granting summary judgment for employer where the plaintiff could only point to timing of her termination as evidence of retaliation).  Plaintiff testified that before his second mini-stroke, things were going well and he was in line for the promotion, but after he returned to work, management turned on him and decided not to promote him.  (*See* Ex. 2, Haggerty Tr. at 50:11-21.)  The other problem with this argument is that the undisputed evidence belies the timeline.  Both his resignation letter and emails indicate that Plaintiff felt ignored and complained about a lack of support in March of 2017, months <u>before</u> his second mini-stroke.  (Ex. 2, Haggerty Tr. at 92:17-23, 93:24-95:1; Ex. 7, P000163-164).  Plaintiff cannot point to any other evidence to show discriminatory animus.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

V.     <u>CONCLUSION</u>

Plaintiff has failed to produce any evidence to show a genuine dispute of material fact that (a) he suffered from a legally recognized disability, (b) he suffered an adverse employment action, or (c) that any such adverse employment action occurred because of illegal discrimination.  For these reasons, Kaycan is entitled to judgment as a matter of law and respectfully requests that this Court grant its motion for summary judgment.

DEFENDANT,
KAYCAN, LTD.


By:     /s/ Sarah A. Westby
         Daniel A. Schwartz (ct15823)
         Sarah A. Westby (ct29548)
         E-mail: dschwartz@goodwin.com
         E-mail: swestby@goodwin.com
         Shipman & Goodwin LLP
         One Constitution Plaza
         Hartford, CT 06103-1919
         Tel.: (860) 251-5000
         Fax: (860) 251-5216
         Its Attorneys

## <u>CERTIFICATION</u>

       This is to certify that on December 1, 2020 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


                         /s/ Sarah A. Westby             
                            Sarah A. Westby